# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRE WELLS,<br><br>        Plaintiff,<br><br>   v.<br><br>T. CAGLE, et al.,<br><br>        Defendants. | 1:11-cv-1550-LJO-BAM (PC)<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE<br>(DOC. 111)<br><br>ORDER DENYING PLAINTIFF'S REQUESTS FOR JUDICIAL NOTICE<br>(Docs. 103, 116, 122)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR ORDER TO MARSHAL AND REQUESTS FOR SUBPOENAS<br>(Docs. 102, 104, 119)<br><br>ORDER DENYING PLAINTIFF'S REQUEST FOR SANCTIONS<br>(Docs. 107, 122)<br><br>ORDER DENYING PLAINTIFF'S MOTIONS FOR THE APPOINTMENT OF COUNSEL WITHOUT PREJUDICE<br>(Docs. 107, 109, 112, 116, 117, 122) |

**I.  Background**

Plaintiff Andre Wells ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 29, 2011.  This action

1

proceeds on Plaintiff's claims against Defendants T. Cagle and R. Perez for violations of the Eighth Amendment.

On August 8, 2014, Plaintiff filed a motion requesting a stay of this action or, in the alternative, appointment of counsel. Plaintiff explained that he was housed at the Department of Mental Health and would be transferred to an intermediate care facility ("ICF"). Plaintiff also reported that he did not have access to a law library and he had received only a crayon for writing. Plaintiff asked the Court to put this action on hold or appoint him counsel. (Doc. 81).

Defendants opposed the stay request, arguing that Plaintiff's contention regarding his inability to prosecute this action based on his status as an inmate-patient lacked merit. Defendants reported that Plaintiff had been placed in a mental health crisis bed from June 1, 2014, through June 4, 2014. Defendants also reported that Plaintiff again was admitted to a crisis bed on June 21, 2014, and on June 30, 2014, he was referred to DSH-Vacaville. Plaintiff was admitted to DSH-Vacaville on July 16, 2014, and placed in the Acute Psychiatric Program. At DSH-Vacaville, Defendants asserted that Plaintiff had access to pen fillers for writing in the dayroom, could obtain law library materials through the paging system and could request assistance from a correctional counselor with respect to obtaining access to his legal materials. (Doc. 87).

On November 20, 2014, Plaintiff filed a renewed motion for the appointment of counsel. Plaintiff reported that he had been transferred to an ICF in Stockton, California, but that his situation had worsened. Plaintiff again asserted a lack of law library access and lack of supplies. Plaintiff further asserted that he had been unable to focus on treatment, felt hopeless and overwhelmed, thought of suicide, and experienced symptoms of a bipolar disorder. (Doc. 96).

On November 25, 2014, Plaintiff filed a motion requesting a ruling on his motion for the appointment of counsel. Plaintiff asserted that he was in a worse condition, but provided no supporting information. (Doc. 97).

On December 19, 2014, the Court granted Plaintiff's request for stay, finding that the serious nature of Plaintiff's mental health issues, which included repeated placement in a crisis

bed and in an Acute Psychiatric Program, supported a stay. The Court stayed the action for 90 days to allow Plaintiff an opportunity to gather materials, secure his legal documents, and marshal evidence of his mental status for any renewed motion for the appointment of counsel. The parties were directed to submit written status reports regarding Plaintiff's mental health and ability to prosecute this action at the end of the 90-day period. Plaintiff also was directed to submit information regarding his efforts to obtain needed legal materials during the stay. In addition to granting the stay, the Court denied Plaintiff's pending motions for the appointment of counsel without prejudice to renewal with supporting documented evidence of his current mental status and functioning. The Court also denied Defendants' pending discovery motions without prejudice and informed the parties that an amended scheduling order would issue following submission of the requested status reports. (Doc. 100).

On March 18, 2015, Plaintiff renewed his motion for the appointment of counsel. In support, Plaintiff submitted a letter from his psychiatrist, Dr. Sanmukan Surulinathan of DSH-Stockton. Dr. Surulinathan indicated that Plaintiff had been hospitalized since October 20, 2014, for a suicide attempt in July 2014. Dr. Surulinathan identified Plaintiff's diagnoses as Bipolar I Disorder, most recent episode manic, Post-Traumatic Stress Disorder, Antisocial Personality Disorder and history of head traumas. With regard to head traumas, Dr. Surulinathan identified a psychologist's evaluation on October 30, 2014, which revealed a cognitive impairment. An additional psychologist's evaluation on November 21, 2014, revealed a high acute suicide risk "due to stated feelings of severe helplessness and hopelessness accompanied by severe impulsivity, cognitive deficits and due to past traumatic brain injuries impacting his judgment, ability to reason or fully process emotions related to difficulty adjusting to new environments and expectations." (Doc. 107 at 6).

With regard to Plaintiff's current mental status, Dr. Surulinathan opined as follows:

> He is calm, cooperative and alert. He has normal psychomotor activity. He is oriented to time, place, person and situation. His speech is normal and relevant to the topic of conversation. He is able to comprehend what is being said to him and respond appropriately. His thought process is linear and goal directed. He has no thoughts to hurt himself or others, nor is he experiencing any hallucinations or

> delusions presently. He is able to attend to tasks in a normal manner. His fund of general knowledge is average. He is able to perform simple calculations correctly. He has insight in to his illness as he is aware of his diagnoses . . . [and] is compliant with his psychiatric medications.

(Doc. 107 at 6-7).

Based on Dr. Surulinathan's report, Plaintiff argued that his diagnoses affected his judgment and his ability to present this case and also demonstrated a high probability to commit suicide. In addition to information regarding his mental status, Plaintiff presented evidence regarding the amount of time he was allowed to use the law library and made certain assertions that Defendants falsified documents in an attempt to acquire Plaintiff's mental health records via attorney Michael Levin or a private investigator. (Doc. 107).

On March 20, 2015, in compliance with the Court's order, Defendants filed a status report regarding Plaintiff's mental health status and ability to prosecute this action. Defendants submitted and relied on Dr. Surulinathan's report to argue that Plaintiff's mental status was such that he could proceed with this action. Defendants also asserted that Plaintiff had access to the law library at DSH-Stockton and could possess necessary legal materials. (Doc. 108).

On April 3, 2015, Plaintiff responded to Defendants' status report and their reliance on Dr. Surulinathan's report. Plaintiff requested a status hearing to express dissatisfaction with the judicial process and Defendants' alleged propensity to deviate from facts and use convoluted reasoning. Plaintiff alternatively requested a decision on the motion for the appointment of counsel. Additionally, Plaintiff objected to the declaration of Defendants' witness and documents submitted in support of Defendants' contention that Plaintiff had access to supplies and the law library. (Doc. 109). Defendants moved to strike Plaintiff's response to the status report, arguing that it was not authorized by the Court.[1] Alternatively, Defendants argued that Plaintiff's response lacked merit. (Doc. 111).

---

[1] Defendants' request to strike is HEREBY DENIED. The Court considered Plaintiff's response to the status report and Defendants' substantive opposition to that response in reaching its determination.

1   On April 10, 2015, Defendants filed an opposition to Plaintiff's renewed motion for the
2 appointment of counsel. Defendants also denied any connection with attorney Michael Levin or
3 his investigators' attempts to interview Plaintiff. (Doc. 110-1).
4   On April 22, 2015, Plaintiff filed a motion requesting a ruling by the Court on his
5 pending motion for appointment of counsel. In his moving papers, Plaintiff again suggested that
6 Defendants or someone working on their behalf tried to pose as Plaintiff's attorney to obtain his
7 information. Plaintiff also responded to Defendant's motion to strike. (Doc. 112).
8   On June 29, 2015, Plaintiff filed a motion regarding judicial notice of "*Keyhea*"
9 documents in support of Plaintiff's motion for voluntary appointment of counsel and renewal of
10 his motion for appointment of counsel. (Doc. 116). The Court construes this motion as a
11 renewed request for appointment of counsel with supplementary evidence. The supplementary
12 evidence includes documents pertaining to involuntary medication of Plaintiff while at California
13 State Prison – Sacramento, where he currently is housed. According to these documents, on May
14 29, 2015, Plaintiff was alleged to be a danger to self due to bipolar mood disorder type 1 most
15 recent episode manic with psychotic features. Plaintiff had been admitted to a crisis bed on May
16 27, 2015, for suicidal ideations. Prior to his admission, Plaintiff admitted making a noose of a
17 bedsheet in the cell in an attempt to hang himself. On May 28, 2015, Plaintiff flooded his cell,
18 creating a potential danger. The treating psychiatrist found Plaintiff to be delusional, displaying
19 poor insight into mental illness by not being compliant with psychotropic medications and poor
20 judgment. Following a hearing on the petition for involuntary medication, Plaintiff was found to
21 be a danger to self and could be involuntarily administered psychotropic medication for a one-
22 year period from June 17, 2015 to June 17, 2016. (Doc. 116 at Ex. A).
23   On July 13, 2015, Plaintiff renewed his motion for the appointment of counsel in light of
24 supplemental evidence regarding his involuntary medication. (Doc. 117).
25   On July 20, 2015, Defendants responded to the supplemental documents and Plaintiff's
26 renewed motion for appointment of counsel. Defendants argued that Plaintiff's additional

5

evidence demonstrated that he is receiving the appropriate treatment for his condition and is capable of litigating this case without assistance of counsel. (Docs. 118).

On July 30, 2015, Plaintiff replied, arguing Defendants' assertion that the evidence demonstrates he is capable of litigating this case is a fallacy. Plaintiff contended that his repeated admission to a mental health crisis bed and DSH contradicted Defendants' assertion. Plaintiff further contended that others who had been medicated returned to crisis beds or DSH. (Doc. 120). Plaintiff filed supplemental arguments and objections on August 17, 2015, arguing, in part, that he could not proceed without his property. (Doc. 121).

On October 22, 2015, Plaintiff filed a request for judicial notice of records from his prison file. In addition, Plaintiff requested a ruling on his pending motion for appointment of counsel, along with sanctions against Defendants for attempting to have someone pose as an attorney to visit him.[2] (Doc. 122). Defendants filed a response on November 12, 2015, and Plaintiff replied on December 10, 2015. (Docs. 123, 124).

Plaintiff's motions for the appointment of counsel and related filings are deemed submitted. Local Rule 230(l).

### II. Plaintiff's Requests for Judicial Notice

On January 26, 2015, Plaintiff filed a request for judicial notice of letters he sent to various officials at DSH-Stockton and DSH-Vacaville, along with his inmate appeal and related responses from DSH-Vacaville. (Doc. 103). On June 29, 2015, Plaintiff requested judicial notice of his *Keyhea* documents in support of his motion for appointment of counsel. (Doc. 116). On October 22, 2015, Plaintiff requested judicial notice of his CDC 7362 medical forms from Corcoran State Prison. (Doc. 122).

With the possible exception of the order authorizing involuntary medication, the letters, medical forms and other documents submitted by Plaintiff are not the proper subject of judicial

---

[2] Insofar as Plaintiff seeks discovery-related sanctions, his request is unsupported and is HEREBY DENIED. (Docs. 107, 122). There is no evidence demonstrating that Defendants or their counsel were connected in any fashion to attorney Michael Levin or his investigators. Further, there is no evidence demonstrating that Defendants or their counsel engaged in any improper means to secure evidence regarding Plaintiff's mental health records.

notice. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Accordingly, Plaintiff's requests for judicial notice are HEREBY DENIED. Although the Court has declined to take judicial notice of these documents, the Court has considered the evidence and documents necessary to inform its decision regarding the request for counsel, including the involuntary medication records.

### III. Plaintiff's Motion for Order to Marshal and Requests for Subpoenas

During the course of the stay, Plaintiff filed a motion for an order directing the United States Marshal "to ask DSH Stockton California Health Care Facility" certain questions and to obtain certain documents related to his mental health status, diagnoses and symptoms and legal materials. (Doc. 102). Plaintiff also filed a motion for subpoena duces tecum to obtain documents from DSH-Stockton regarding his diagnoses and symptoms and how those symptoms interfered with the ability to present and litigate a civil action. (Doc. 104).

In light of the evidence from Dr. Surulinathan detailing Plaintiff's diagnoses and symptoms, along with evidence from the involuntary medication proceedings, Plaintiff's requests for documents related to his symptoms and diagnoses are no longer necessary. Accordingly, such requests are HEREBY DENIED as moot.

In addition to the foregoing, Plaintiff also filed a motion to subpoena his "property" from DSH-Vacaville to CSP-Sacramento in July 2015. (Doc. 119). Plaintiff's request is vague and does not specify the "property" being requested. Although Plaintiff references "evidence," including incident reports and a medical slip, it is unclear whether this information is contained in the property being requested or if he merely is seeking personal property. Additionally, the Court has no available information regarding the current location or status of Plaintiff's property. Moreover, the Court does not have jurisdiction over officials at DSH-Vacaville and it cannot issue the order Plaintiff seeks. *E.g., Summers v. Earth Island Institute*, 555 U.S. 488, 493, 129 S.Ct. 1142, 1149 (2009); *Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir. 2010); *Zepeda v.*

*United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985).  For these reasons, Plaintiff's request for a subpoena of his property from DSH-Vacaville is HEREBY DENIED.

### IV. Plaintiff's Renewed Motions for the Appointment of Counsel

As Plaintiff previously has been informed, he does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), withdrawn on other grounds, 154 F.3d 952, 954 n. 1 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C. §1915(e)(1).  *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989).  However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1).  *Rand*, 113 F.3d at 1525.

Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases.  In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citations omitted).

Plaintiff has asserted two primary bases supporting his request for the appointment of voluntary counsel, which can be categorized as follows:  (1) the difficulties associated with conducting litigation while incarcerated; and (2) the limitations resulting from his documented mental health issues.  With regard to the difficulties associated with conducting litigation while incarcerated, such as limited law library access or limited supplies, Plaintiff's situation does not differ materially from circumstances faced by other prisoners attempting to litigate their claims in this Court.  In other words, any difficulties fairly attributable to Plaintiff's confinement alone are not exceptional.  Further, many of the difficulties associated with confinement can be ameliorated by appropriate extensions of time.

With regard to limitations resulting from Plaintiff's documented mental health issues, the Court finds that any such issues have not prevented Plaintiff from a consistent ability to articulate his claims.  This is not to suggest that Plaintiff's mental health issues have been

disregarded or considered lightly. Rather, this finding is based on a determination that throughout these proceedings, and despite any fluctuations in Plaintiff's mental health status, Plaintiff's filings have remained directed and coherent and have demonstrated an active understanding of the issues presented. Indeed, Plaintiff's ability to submit relevant medical records and make cogent arguments have confirmed Plaintiff's ability to gather evidence and present the merits of his claims without the assistance of counsel. Further, the Court has considered the mental status report of Dr. Surulinathan and the involuntary medication documents. Taken together, this evidence demonstrates that Plaintiff, when medically compliant, remains capable of comprehending and responding appropriately, attending to tasks, and thinking in a linear and goal directed manner.

For these reasons, the Court does not find the exceptional circumstances necessary for the appointment of counsel at this time and Plaintiff's motion shall be denied. To ensure that this action proceeds in an expeditious manner, the Court intends to issue a separate scheduling order, which will establish deadlines for the completion of discovery and the filing of any dispositive motions.

**V.  Conclusion and Order**

For the reasons stated, it is HEREBY ORDERED as follows:

1. Defendants' motion to strike (Doc. 111) is DENIED;
2. Plaintiff's requests for judicial notice (Docs. 103, 116, 122) are DENIED;
3. Plaintiff's motion for order to marshal and requests for subpoenas (Docs. 102, 104, 119) are DENIED;
4. Plaintiff's request for sanctions (Docs. 107, 122) is DENIED;
5. Plaintiff's motions for the appointment of counsel (Docs. 107, 109, 112, 116, 117, 122) are DENIED without prejudice; and

///

///

///

6. By separate order, this Court will issue a scheduling order setting forth the deadlines for completion of discovery and the filing of dispositive motions.

IT IS SO ORDERED.

Dated:   **March 31, 2016**              /s/ Barbara A. McAuliffe            
                                                   UNITED STATES MAGISTRATE JUDGE